UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALICE WASHINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 12 C 8533 |
| | ) |
| OFFICE OF THE STATE | ) Judge Rebecca R. Pallmeyer |
| APPELLATE DEFENDER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alice Washington, who is African-American, sued her former employer, the Illinois Office of the State Appellate Defender ("OSAD"), alleging that OSAD reduced her salary and then fired her because of her race in early 2008, or alternatively, that she was fired in retaliation for her complaints about discrimination after the salary reduction. Washington also sued Michael Pelletier, the State Appellate Defender, in his personal capacity, but the court granted his motion to dismiss in late 2013. (Order (Sept. 12, 2013) [44].) OSAD moved for summary judgment on all of Washington's claims. The court granted the motion in part; Washington's race-based discrimination and retaliation claims survived. (Mem. Op. & Order (Mar. 23, 2015) [96].)

At trial, the jury found in Washington's favor on her retaliation theory, awarding $400,000 in compensatory damages. (Jury Verdict (Nov. 18, 2015) [151].) Both parties made motions regarding damages after trial; OSAD moved to bar damages that it claimed were undisclosed before trial and to enforce the statutory damages cap, and Washington requested equitable relief. The court reduced the compensatory damages to $200,000 (Mem. Op. & Order (May 31, 2016) [184]), but awarded several categories of equitable relief—over OSAD's strenuous objections—amounting to $613,029.44. (Mem. Op. & Order (Sept. 22, 2016) [193].)

OSAD has now filed a motion for a new trial [199]. OSAD raises seven reasons in support: (1) Washington's grievance was not a protected activity for which she could be retaliated against, (2) a jury instruction identifying one of Washington's complaints as protected activity was erroneous, (3) there was no causal connection between her protected activity and her firing, (4) several pieces of evidence were improperly admitted or excluded, (5) a *Batson* challenge by Washington should not have been granted, (6) Washington's counsel made inappropriate comments during closing, and (7) the damages award was improper. A new trial can be granted for "any reason for which a new trial has heretofore been granted in an action at law in federal court," which encompasses procedural and substantive challenges. FED. R. CIV. P. 59(a)(1)(A). OSAD's motion also requests relief under Rule 60(b)(6), which permits a court to grant a new trial for any reason that "justifies relief." FED. R. CIV. P. 60(b)(6). The court considers each ground below, but finds that the motion should be denied.

**I.  Protected Activity**

Washington was terminated on February 4, 2008. The only protected activity preceding her firing was a formal grievance that she filed just five days earlier on January 30. (Step 1 Grievance Form, Alice Washington (Jan. 30, 2008), Ex. A to Def.'s Br. [202-1].) In the grievance, Washington complained: "On January 18, 2008, while out of the office on FMLA, after having surgery for a problem occurring from a previous breast cancer operation, I was sent an e-mail pertaining to a cut in salary." (*Id.* at 1.) She went on to describe, at length, a pattern of race discrimination by Anna Ahronheim, the deputy defender in charge of the postconviction unit in which Washington worked. (*Id.* at 1–2.)

An employer violates Title VII, or the ADA, when the employer takes an adverse employment action against an employee because the employee complained of discrimination prohibited by the relevant statute. *See Dickerson v. Bd. of Tr. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601–02 (7th Cir. 2011) (ADA retaliation). An employee "need not use the magic words . . . 'discrimination'" in complaining to an employer in order to trigger the protections of

2

the anti-discrimination statutes, but must "say something to indicate [the protected class] is an issue." *See Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003) (quoting *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1007–08 (7th Cir. 2000)). OSAD has maintained throughout this litigation, including at summary judgment, that Washington's grievance did not constitute protected activity because (1) it did not indicate that she was being discriminated against based on her disability, and (2) her complaints of racial discrimination concerned events that had taken place months, or even years, earlier. OSAD argues now that the court erred by admitting the grievance as protected activity, and that OSAD should therefore be granted a new trial.

Washington points out, as a preliminary matter, that this argument and many others in OSAD's motion are purely legal in nature and could have been raised as a motion for judgment as a matter of law. *See* FED. R. CIV. P. 50. Regardless, a party may properly file a Rule 59(e) motion asking the court for a new trial without moving under Rule 50 for a judgment in its favor, which is what OSAD seeks here. *Avery v. City of Milwaukee*, 847 F.3d 433, 438 (7th Cir. 2017).[1] On a motion for new trial, courts may consider each of the arguments OSAD raises. *See Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 833 (7th Cir. 2016) (arguing evidence improperly admitted); *see also id.* at 834–35 (considering whether jury instructions were erroneous), *Jimenez v. City of Chicago*, 732 F.3d 710, 714–15 (7th Cir. 2013) (considering improperly granted *Batson* challenge), *Savino v. C.P. Hall Co.*, 199 F.3d 925, 935 (7th Cir. 1999) (arguing verdict against weight of evidence). The court will consider OSAD's arguments in the motion.

---

[1] There may be consequences for OSAD's failure to raise a Rule 50 motion, in that it may not have preserved its right to request a judgment in its favor on appeal, *Laborers' Pension Fund v. A & C Environmental, Inc.*, 301 F.3d 768, 775–78 (7th Cir. 2002), but OSAD's decision does not preclude its ability to request a new trial altogether. *See Avery*, 847 F.3d at 438.

3

Nevertheless, the court believes its previous ruling at summary judgment was correct: Washington's grievance makes a clear connection between the action she believed was discriminatory (the salary reduction) and her disability (her breast cancer and related treatment). (Mem. Op. & Order (May 23, 2015) [96], at 23–24.) She also explained her entire history with Ahronheim, which, she believed, demonstrated that Ahronheim was discriminating against her based on race. In the case upon which OSAD relies, *Tomanovich v. City of Indianopolis*, the Seventh Circuit found that an employee's complaint that he was subjected to "discriminatory treatment with respect to his pay," without any further indication of why he was being discriminated against, was not sufficient to constitute a protected activity. 457 F.3d 656, 663–64 (7th Cir. 2006) (affirming summary judgment). Here, Washington referenced two bases of discrimination in her grievance, and the court stands by its decision that her grievance constituted protected activity.

## II. Jury Instructions Regarding IDHR Complaint

OSAD argues that the court erroneously issued a jury instruction regarding which of Washington's activities was protected and could stand as a predicate for a retaliation claim. An erroneous jury instruction is grounds for a new trial where a party shows "both that the instructions did not adequately state the law and that the error was prejudicial . . . because the jury was likely to be confused or misled." *United States v. White*, 443 F.3d 582, 587 (7th Cir. 2006) (quoting *United States v. Smith*, 415 F.3d 682, 688 (7th Cir. 2005)). In this case, the court gave the following instruction:

> Protected activities include making a charge of discrimination or otherwise participating in any manner in one's own charge of discrimination or retaliation investigation proceeding or hearing under Title VII. In this case, the plaintiff, Ms. Washington, asserts that she engaged in the following protected activities: Filed an internal grievance with OSAD and a complaint with the Illinois Department of Human Rights. The plaintiff must prove that she actually participated in protected activities, but the plaintiff does not have to prove that her underlying charge, investigation, proceeding, or hearing was successful.

(Tr. of Trial Proceedings (Nov. 16, 2016), Ex. C to Def.'s Br. [hereinafter "Tr."] [202-3], at 545:8–19.)  OSAD contends that this instruction improperly identified the Illinois Department of Human Rights ("IDHR") complaint as a protected activity, even though it occurred after Washington was fired and therefore could not be the predicate for a retaliation claim.

It is undisputed that an IDHR charge is protected activity.  *See Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 740 (7th Cir. 2011), *overruled on other grounds by Ortiz v. Werner Enterps.*, 834 F.3d 760 (7th Cir. 2016) (filing a formal charge "the most obvious form of statutorily protected activity.").  In a jury instruction that listed the protected activities in which Washington engaged, it made sense to identify the IDHR complaint, which falls clearly into the definition given to the jury.  The jurors were aware that the IDHR complaint post-dated Washington's termination.  They heard a great deal about the IDHR complaint in the trial, not as a predicate for an adverse employment action, but because of the phone call from Pelletier that it allegedly triggered: Washington testified that after the IDHR complaint (and after she had been fired), Pelletier called her, raged at her for filing the complaint, and threatened that she would not receive post-employment benefits or work for the state again.  (Tr. 168:17–169:8.)

Washington's charge did constitute protected activity, and any confusion the jury had should have been dispelled by the clear instruction on retaliation: "With respect to her forced resignation/retaliation claim, Plaintiff Washington must prove by a preponderance of the evidence that she was forced to resign because she complained of discrimination."  (Tr. 544:19–22.)  Both parties made clear to the jury that Washington's resignation occurred before the IDHR complaint; OSAD argued in closing that Pelletier made his decision before she even filed her grievance (Tr. 522:10–22), and Washington herself asserted that the decision was made after the grievance.  (Tr. 534:9–19.)  In context, including the IDHR complaint to preserve accuracy was not misleading to the jury, and OSAD suffered no prejudice.

## III. Causal Connection Between Grievance and Firing

OSAD contends that the verdict was not consistent with the evidence because Pelletier made the decision to fire Washington before she filed her grievance on January 30, 2008, and before he became aware of it on February 1. (Tr. 407:3–7.) A plaintiff in a discrimination action can only succeed on a retaliation claim where the protected activity was the but-for cause of the employer's adverse employment action. *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 697 (7th Cir. 2017). At trial, Pelletier testified that he made the decision to terminate Washington around January 24th (Tr. 428:6–8), well before he became aware of the grievance on February 1st, because he believed she was a "ghost payroller" who was not completing full work days. (Tr. 406:16–21.) Because his decision pre-dated the grievance, OSAD argues, the grievance could not have been the but-for cause.

A new trial should be granted where the verdict is against the manifest weight of the evidence. *Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012). Pelletier's testimony about when he made his decision was not convincingly corroborated, and the rest of the timeline was not favorable for OSAD. Washington filed her grievance just a few days before she was fired on February 4, 2008. The jury evidently believed that Pelletier made that decision in the four days after he became aware of the grievance. This was not unreasonable, given Washington's testimony about Pelletier's threatening phone call that cemented his retaliatory motivation in their minds (Tr. 168:17–169:17), and Pelletier's uncertainty about Washington's insistence that he spoke with her after the termination:

> Q. So, you don't recall whether you called her?
> A. I don't hear that -- my testimony was I don't recall having a conversation with her. I've never called her on the phone, so calling her is different -- did I subsequently have a conversation with her? I don't recall. I may have. But I didn't -- never called her on the phone.
> Q. And how would you have had this subsequent conversation with her?
> A. I don't know. That's what I'm saying, I don't recall. I may have had a conversation with her.
> Q. And could that conversation have been via telephone?
> A. No, with absolute certainty, no.
> Q. So, it would have been in person, then?

6

|   | A. | Via e-mail. |
|---|----|-------------|
|   | Q. | Okay. But you don't recall? |
|   | A. | I do not recall. |

(Tr. 421:2–17)

|   | Q. | You didn't -- did you have Alice's personal e-mail address? |
|---|----|-------------|
|   | A. | No. |

(Tr. 431:1–3.)

OSAD's position is that Washington was not meeting the expectations of her employment. That position was undermined through testimony by several other attorneys, former supervisors, and fellow employees who testified favorably regarding her job performance. (Tr. 126:8–12 (Robert Gevirtz), Tr. 217:7–222:5 (Stephen Richards), Tr. 250:23–254:20 (Mark Kuzatsky), Tr. 293:6–294:18 (Monte Dawson).) Dawson, the investigator who took over Washington's position and office after she resigned, found that her notes were accessible and her files were in order. (Tr. 293:12–15, 294:1–5, 294:16–18). Furthermore, Washington had no previous record of warnings or discipline. (Tr. 166:10–16.) The jury did not have to believe Pelletier, and they chose not to. That decision was not against the clear weight of the evidence.

## IV. Admission of Evidence

OSAD argues that several categories of evidence were improperly excluded, and others improperly included. A new trial should be granted for evidentiary errors "only if the error had a substantial influence over the jury and the result reached was inconsistent with substantial justice." *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 844 (7th Cir. 2017). The court addresses each argument in turn.

### A. Exclusion of Travel Vouchers

The court refused to admit thirty-five pages of travel vouchers that purportedly would have shown that Washington was not working a full day on those days when she was doing field work, and would have established discrepancies in the records Washington maintained in the

time-keeping system, thereby supporting OSAD's argument that Washington was not meeting the employer's legitimate expectations. The vouchers had been produced in discovery. The court nevertheless excluded the vouchers because there was no evidence that Pelletier had seen or actually relied upon the vouchers in making his decision to terminate Washington. The employer's motivation in firing an employee is the relevant factor in a retaliation case. *See Burton*, 851 F.3d at 697.

OSAD argues that Pelletier had broadly identified Washington's personnel file as part of his investigation (Dep. of Michael Pelletier, Ex. E to Def.'s Br. [202-5], at 31:3–11), and referenced records of the time she spent out of the office as a reason that he terminated her. (*Id.* 59:21–60:3.) At no point during his deposition, however, did he make any specific mention of the travel vouchers. Neither did OSAD identify the travel vouchers as a basis for Washington's firing in its summary judgment briefing, nor its Local Rule 56.1 statement of material facts that supported that motion. The court could only conclude that this was a post-hoc justification for Pelletier's decision which did not genuinely inform his motivation. The vouchers were irrelevant and properly excluded.

OSAD cites in support *Ty Inc. v. Softbelly's Inc.*, in which the Seventh Circuit reversed a district court's exclusion of documents after the defendant failed to timely submit a list of documents for trial. 353 F.3d 528, 533–34 (7th Cir. 2003). The Seventh Circuit observed that the documents were "the heart of Softbelly's case," rendering their exclusion "tantamount to entering judgment for Ty," which was an unwarranted sanction in proportion to the wrong. *Id. Ty* differs substantially from the circumstances here—there, the documents were not only relevant, but critical to the case, and their omission was a disproportionate sanction for the party's failure to timely provide a pre-trial exhibit list. In this case, the court's ruling was not a sanction, but a finding that the vouchers were not relevant because there was no evidence that Pelletier looked at them before making the discharge decision. The court stands by its ruling that they were not relevant, and were appropriately excluded.

### B. Exclusion of January 29, 2008 E-mail

To refresh Pelletier's recollection at trial, OSAD produced an e-mail purportedly sent to Pelletier in response to his request for employment-termination paperwork for Washington and others on January 29. Pelletier did not recall exactly when he decided to terminate Washington, and testified that the e-mail would help him remember. (Tr. 405:8–20.) OSAD's attorney used the e-mail to refresh Pelletier's recollection about when he decided to terminate Washington (Tr. 405:13–406:7), which—if that decision was made before February 1 when he learned of Washington's grievance—would establish that his motivations were not retaliatory.

Unfortunately, OSAD never produced this e-mail until the moment the defense sought to use it at trial. (Tr. 443:17–22). The court accordingly excluded it and issued a limiting instruction to the jury to disregard it. (Tr. 459:10–14.) Rule 26 requires parties to disclose "a copy–or a description by category and location–of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]" FED. R. CIV. P. 26(a)(1)(A)(ii). Parties must supplement those disclosures with any newly-discovered information. FED. R. CIV. P. 26(e)(1). If a party fails to "provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

The parties were ordered to complete those disclosures by July 19, 2013. (Minute Order (Jul. 17, 2013) [37].) OSAD never produced the e-mail, and it was not mentioned at Pelletier's deposition. Accordingly, the court instructed the jury to disregard all reference to it. OSAD points to *United States v. Vasquez*, in which the Seventh Circuit confirmed that documents need not be entered into evidence to refresh a witness's recollection. 635 F.3d 889, 895 (7th Cir. 2011); *see also Pincus v. Pabst Brewing Co.*, 893 F.2d 1544, 1554 (7th Cir. 1990). The court need not resolve whether Rule 37's sanctions would always reach documents used solely for

9

refreshing recollections, but believes that the sanction was appropriate in this case: OSAD never mentioned the existence of this e-mail, despite its Rule 26 obligations and document requests from Washington that should have produced it. (Tr. of Proceedings (Nov. 23, 2015), Ex. A to Pl.'s Resp. [hereinafter "Nov. 23 Tr."] [204-2], at 6:8–17.) Where a document as critical as the e-mail never appears in litigation up to the moment of its use at trial, the court is satisfied that it is appropriate to bar that document.

### C. Statements Regarding Washington's Illness

Plaintiff's counsel mentioned several times during the trial that Washington had suffered from breast cancer. OSAD tried to prevent this by filing a motion in limine, and the court instructed that information regarding Washington's medical issues needed to be presented "in a neutral way so as not to create undue prejudice or sympathy," but that it could be admitted, as the information was necessary foundation for the jury to understand the basis of Washington's disability discrimination claim. (Tr. of Pre-Trial Proceedings (Nov. 5, 2015), Ex. C. to Def.'s Br. [hereinafter "Pre-Trial Tr."] [202-3], at 16:12–25.) OSAD argues that the following incidents went beyond a neutral presentation:

- In Washington's opening statement, counsel stated in providing a timeline of the case: "In 2004, she's diagnosed with breast cancer and has surgery. She battles through it and returns to work in 2005, her determination undiminished." (Tr. 107:19–20.)

- During Washington's direct examination, her counsel asked her why she had to take medical leave, to which she responded: "In 2004, I had a sister that was diagnosed with breast cancer. Two weeks after we buried her, I was diagnosed with the same type of cancer. I then had to have an emergency surgery and start chemotherapy and radiation, so I was out until 2005." (Tr. 145:8–14.)

- In Washington's closing statement, counsel summarized Pelletier's actions as follows: "To experience discrimination and then retaliation and then a threat, no

10

one needs that. No one deserves that. Especially Alice. To go through cancer, chemo, radiation, two surgeries, and the stress all this caused on her, it's insulting." (Tr. 508:17–21.)

OSAD did not object to these statements when they were made at the trial. "Improper statements should be objected to when made, so as to give the trial judge a chance to correct any prejudice caused by the statement." *Lewis v. City of Chi. Police Dep't*, 590 F.3d 427, 444 (7th Cir. 2009) (citing *Doe ex rel. G.S. v. Johnson,* 52 F.3d 1448, 1465 (7th Cir. 1995)). A party's failure to object during trial forfeits the right to demand a new trial because of the objectionable material. *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 445 (7th Cir. 2010). In *Pickett*, plaintiff's counsel in closing referenced some of the defendant's underlying sexual harassment conduct that the district court had previously ruled inactionable, but the court refused to grant a new trial. *Id.* The Seventh Circuit affirmed, observing that the comments did clearly not violate the court's ruling on the motion in limine, and that defendant had forfeited the argument by failing to object. *Id.*

The same occurred here. First, the comments in opening and during direct examination did not violate the motion in limine, as the use was foundational. In closing, counsel did use Washington's illness for a non-foundational use, but this was harmless. The jury knew she was ill during this period, and the glancing reference could not have had a substantial influence on the outcome. Second, OSAD did not object to any of these uses and has forfeited the argument. The court declines to grant a new trial on this basis.

**D.    IDHR complaint and Pelletier's phone call**

OSAD sought, in a motion in limine, to exclude evidence of Washington's complaint to IDHR, and Pelletier's phone call to her afterward, because both actions occurred after she resigned and were therefore irrelevant to Washington's retaliation claim. The court denied the motion because Pelletier's actions after Washington filed another complaint shed light on his motivations for firing her after her first complaint. (Pre-Trial Tr. 40:5–15.) OSAD re-raises the

argument now, contending that it was error to allow Washington to introduce this evidence. The court stands by its ruling that the IDHR complaint and Pelletier's call demonstrated his motivation for firing her in the first place.

OSAD additionally submits the following exchange from Washington's cross-examination during the post-trial proceedings on damages:

> Q. Okay. And did you ever hear Mr. - - or did Mr. Pelletier ever tell you that if there was ever a time to be downsized that he would relocate anyone to a different state agency?
> A. The only time Mr. Pelletier and I spoke was when he fired me.

(Nov. 23 Tr. 24:19–23.) OSAD contends that this amounts to an admission that the conversation Washington claims she had with Pelletier after she was fired never occurred. OSAD's counsel did not follow up on this supposed admission, however, and without more it is far from clear that Washington was disavowing her previous testimony. For instance, Washington could just as easily have meant that the only time Pelletier spoke to her during her employment was when he fired her. The court will not extrapolate from this comment that a new trial is necessary.

None of the evidentiary issues that OSAD raises had a substantial influence on the verdict, and the verdict comported with substantial justice. Accordingly, a new trial on the above evidentiary grounds is denied.

**V.**     ***Batson* challenge**

During jury selection, Washington raised, and the court granted, a *Batson* challenge to OSAD's strike of an African-American juror. OSAD contends this prevented the parties from selecting an impartial jury, and that a new trial should be granted. The court disagrees.

The court granted the *Batson* challenge because Washington's counsel identified three other non-African-American jurors who were similarly situated; they, like the challenged juror, answered in the affirmative to a question regarding past incidents of discrimination against themselves or their family members. (Tr. 96:1–14.) Only one of these jurors had been stricken

by OSAD. (Tr. 96:10–11.) Accordingly, the court sustained the *Batson* challenge. *Harris v. Hardy*, 680 F.3d 942, 955 (7th Cir. 2012) (failure to distinguish stricken minority juror from other similarly-situated jurors adequate basis for *Batson* challenge).

Even if granting the challenge was an error, it did not affect the outcome of the trial. Absent a showing that "a biased juror sat on the jury," an erroneously granted *Batson* challenge is harmless. *Jimenez v. City of Chicago*, 732 F.3d 710, 714–16 (7th Cir. 2013). OSAD has not alleged any harm other than the general allegation that it was unable to seat an impartial jury, but the court finds no support for that position in the record—each seated juror was otherwise qualified and apparently impartial. The court declines to grant a new trial on this issue.

**VI.  Comments during closing**

Washington's counsel argued in closing that OSAD failed to produce any e-mails or records to prove that Pelletier decided that he would terminate Washington before receiving her grievance:

> Now, you heard some testimony yesterday afternoon and this morning that he made the decision on January 24th. Now, this was news to me. It's a bombshell, because he took a deposition. He never said a single word about this. Nothing.
> And I hate to say this, but they are making this all up. If he made that decision on January 24th to terminate someone, where is the e-mail? Where is the memo? Where is the instruction to payroll, she is gone? Or even that she will be gone? There is nothing.
> All the records they have, not a single shred of paper showing that January 24th he made that decision. This is a joke.

(Tr. 515:16–516:3.) OSAD argues that this was improper, as an e-mail did exist but had been excluded, and contends that Pelletier did not mention the e-mail at his deposition because Washington's counsel had simply failed to ask. But that does not explain why OSAD did not produce this purportedly exculpatory material in discovery, why OSAD made no mention of the e-mail on summary judgment, or why, though represented by able trial counsel, OSAD did not identify the document as a trial exhibit. Washington's counsel's suspicions about the bona fides of the excluded e-mail are understandable.

13

In any event, "[i]mproper comments during closing arguments rarely rise to the level of reversible error" that would require a new trial. *United States v. Briseno*, 843 F.3d 264, 269 (7th Cir. 2016) (quoting *United States v. Common*, 818 F.3d 323, 331 (7th Cir. 2016)). In *Schandelmeier-Bartels v. Chicago Park District*, cited by OSAD, the Seventh Circuit found that it was improper for a party to state in closing that an e-mail was fabricated where no evidence at trial supported that conclusion, and further noted that the opposing party's objection to the comments at trial should have been sustained. 634 F.3d 372, 388 (7th Cir. 2012). Even after making that finding, however, the Court of Appeals refused to overturn the district court's ruling that a new trial was unnecessary, because statements in closing argument are not evidence and the jury was so instructed. *Id.* The jury received the same instruction in this case. (Tr. 539:17–21.) Furthermore, unlike the opposing party in *Schandelmeier-Bartels*, OSAD did not object. *See* 634 F.3d at 388. A new trial will not be granted on this issue.

## VI. Damages

OSAD contends that the court improperly awarded several categories of damages, including equitable relief. For this argument, OSAD incorporates two previous briefs. (Def.'s Mem. in Opp. to Mot. for Miscellaneous Relief [179]; Def.'s Resp. to Court's Damages Calculations [186].) Those briefs incorporated others. (Def.'s Resp. to Title VII Cap. [159]; Def.'s Resp. to Pl.'s Mot. for Equitable Relief [155].) OSAD, commendably, has added no new arguments to its position on these damages. The court largely declines to reconsider its previous decisions (Mem. Op. & Order (May 31, 2016) [184]; Mem. Op. & Order (Sept. 22, 2016) [194]), or to grant a new trial on this basis.

The court nevertheless believes it appropriate to consider additional briefing on the narrow issue of the award to Washington for her medical bills that Northwestern has not pursued. The parties should address whether controlling authority precludes this remedy, and whether it can be effectively administered.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to vacate the judgment and for a new trial [199] is denied. The parties are invited to submit simultaneous briefs within 14 days on the court's remedy regarding Washington's medical bills that have not been pursued by Northwestern.

ENTER:

Dated: May 31, 2017

*Rebecca R. Pallmeyer*
REBECCA R. PALLMEYER
United States District Judge